## GILBERT v REYNOLDS METALS COMPANY

1. WORKMEN'S COMPENSATION—DISABILITY—AGGRAVATION OF PREEX-
   ISTING CONDITION.

   A disability caused by aggravation of a preexisting condition is
   compensable under the workmen's compensation law where the
   aggravation is caused by the employment.

2. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL
   BOARD—FINDINGS OF FACT—APPEAL AND ERROR—SCOPE OF RE-
   VIEW.

   Findings of fact of the Workmen's Compensation Appeal Board
   are conclusive absent fraud, thus appellate review is limited to
   determining if there was any evidence to support the findings
   at issue.

3. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL
   BOARD—FINDINGS OF FACT—IMPLIED FINDINGS—APPEAL AND
   ERROR.

   The Court of Appeals may note an implied finding of fact not
   explicitly stated by the Workmen's Compensation Appeal Board
   if the fact was necessarily determined in order to reach a
   certain conclusion.

4. WORKMEN'S COMPENSATION—INSURANCE CARRIERS—VOLUNTARY
   PAYMENT—ADMISSION OF LIABILITY.

   Voluntary payment by an insurer of workmen's compensation
   benefits is not an admission of liability.

5. WORKMEN'S COMPENSATION—GRADUAL DISABILITY—INSURANCE CAR-
   RIERS—LIABILITY.

   The insurance carrier on the risk on the last date worked by an
   employee whose disability developed gradually is liable for the
   entire cost of workmen's compensation benefits where the
   employee worked for the same employer over the period of time

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 278.

[2, 3] 58 Am Jur, Workmen's Compensation § 530.

[4, 5] 58 Am Jur, Workmen's Compensation § 563 *et seq.*

[6] 58 Am Jur, Workmen's Compensation § 484 *et seq.*

involved and the employer changed insurance carriers during that period.

6. WORKMEN'S COMPENSATION—AWARD—INTEREST RATE—STATUTES.
Interest payable on a workmen's compensation award is payable at the statutory legal rate of five percent (MCLA 438.31).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 January 14, 1975, at Grand Rapids. (Docket No. 19074.) Decided February 24, 1975.

Claim by Dale E. Gilbert against Reynolds Metals Company, Travelers Insurance Company, and Liberty Mutual Insurance Company for workmen's compensation benefits. Benefits granted. Defendant Liberty Mutual Insurance Company appeals. Affirmed with modification.

*Reamon, Williams & Klukowski,* for plaintiff.

*Smith, Haughey, Rice, Roegge & Gould* (by *Lance R. Mather),* for Reynolds Metals Company and Travelers Insurance Company.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block),* for Reynolds Metals Company and Liberty Mutual Insurance Company.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

N. J. KAUFMAN, J. This is an appeal from a Workmen's Compensation Appeal Board decision which resulted in liability for compensation payments falling to defendant-appellant, Liberty Mutual Insurance Company ("Liberty Mutual"). The appeal board found that plaintiff-employee, Dale

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Gilbert, suffered work-related injuries not attributable to a single event, and fixed the date of injury as the last date worked with defendant-employer, Reynolds Metals. MCLA 418.301(1); MSA 17.237(301)(1). During the course of Reynolds' employment of the plaintiff, Reynolds changed compensation insurance carriers, replacing defendant-appellee Travelers Insurance Company ("Travelers") with Liberty Mutual. Having fixed the last date worked as the date of injury, the appeal board applied the holding in *Sosnowski v Dandy Hamburger,* 384 Mich 221; 180 NW2d 761 (1970), and held the last insurer, Liberty Mutual, liable for compensation benefits. Liberty Mutual challenges the appeal board's findings as to date of injury, as to which insurance carrier is liable, and as to the amount of interest awarded. We will discuss these issues *seriatim.*

An understanding of the employee's work and medical history is necessary to an understanding of the issues. Plaintiff, Dale Gilbert, commenced employment with Reynolds Metals in 1956 working as a stretcher-saw operator. He reported back problems for the first time in 1960, but the pains became especially severe after a 1962 incident in which he pulled hard on a strap stuck under pieces of metal and felt pain in the lower part of his back. The back pains kept him out of work for two months in 1962, but he returned in May of that year and worked until April, 1964, when he again left work because of the back pain. Travelers was the carrier for Reynolds at this time.

In late 1964, plaintiff underwent surgery for a spinal fusion by Dr. James Glessner. At the hearing on this matter, in 1973, there was a factual dispute as to whether the 1964 fusion was successful, but both the referee and the appeal board found that it was not. Travelers voluntarily paid

compensation at various times subsequent to 1964 but there was never an adjudication by the board as to the amount of disability following the 1964 fusion until the hearing on this matter in 1973.

Plaintiff was released for light work in August, 1965, and Dr. Glessner testified that plaintiff was disabled for heavy work from that time forward. Plaintiff worked in jobs for various other employers until January, 1968 when he returned to work with Reynolds as an "age-oven operator", which is classified as light work but which testimony revealed involved lifting up to 20 pounds and some bending and twisting. Plaintiff continued to have back problems and in February, 1969, stepped into a hole while carrying something, jarring him up, but not severely enough to prompt him to report to first aid. By June, 1969, plaintiff's back pains forced him to leave work, and he has not worked since. The insurance carrier for Reynolds during this latter term of employment was Liberty Mutual.

I

Both the appeal board and the hearing referee found the second course of employment with Reynolds to have aggravated the back condition which began in 1960. It has been clearly established that disability caused by aggravation of a preexisting condition is compensable. *Sheppard v Michigan National Bank,* 348 Mich 577, 583; 83 NW2d 614 (1957), *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963).

Since findings of fact of the Workmen's Compensation Appeal Board are conclusive absent fraud, we are limited to determining if there was any evidence to support the finding here in issue.

*Pastaleniec v The Great A & P Tea Co, Inc,* 49 Mich App 702; 212 NW2d 734 (1973). We find that testimony as to the nature of the work performed during the 1968–69 term of employment and as to plaintiff's being jarred up by stepping in a hole in 1969 constitutes sufficient evidence from which the Workmen's Compensation Appeal Board could have concluded that the latter term of employment aggravated the back condition. The board's finding that the spinal fusion was unsuccessful does not contradict the board's finding that the injury was not due to any single incident and, in fact, supports a finding that it was only one incident in a series of events aggravating the condition. *Kubicsek v General Motors Corp, Fisher Body Plant No 1,* 57 Mich App 517; 226 NW2d 546 (1975).

While the case cited by Liberty Mutual, *Mullins v Dura Corp,* 46 Mich App 52; 207 NW2d 404 (1973), provides a close factual analogy to the instant case, it can be distinguished. In *Mullins* there is no indication that the second course of employment acted to worsen the plaintiff's physical condition. In the case at bar the testimony of plaintiff and Dr. Glessner establishes that plaintiff's back condition became progressively worse during his second period of employment with Reynolds. Plaintiff testified the job entailed lifting, bending and twisting, and the doctor noted the job was too active. Additionally, unlike *Mullins,* this is not a case where we can point to one traumatic injury as being the cause of disability. Rather, plaintiff's back problems began in 1960 and were aggravated by a course of employment over the next nine years. The *Mullins* Court recognized the distinction between a chronic condition which becomes more symptomatic and one which is wors-

ened by aggravation through injury in employment and stated:

"We are not unmindful of the line of cases indicating that aggravation of a preexisting condition which results in a disability can constitute a personal injury itself. See, *e.g., Underwood v National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273 [45 NW2d 286] (1951); *Fields v GM Brass & Aluminum Foundry Co,* 332 Mich 113 [50 NW2d 738] (1952); *Sheppard v Michigan National Bank,* 348 Mich 577, 585 [83 NW2d 614] (1957). However, those cases involved employees performing their ordinary employment who suffered injuries which were treated as an occupational disease where no specific incident caused the disability." 46 Mich App 56.

The rule, however, is not limited to cases of occupational disease. *Riddle v Broad Crane Engineering Co,* 53 Mich App 257; 218 NW2d 845 (1974), and *Regis v Lansing Drop Forge Co,* 25 Mich App 637; 181 NW2d 656 (1970). This Court has recently discussed a situation where a preexisting injury, condition or infirmity is aggravated to disability and equated it with an injury not attributable to a single event, which the Court recognized would result in liability falling to the last carrier. *Gibbs v Keebler Co,* 56 Mich App 690; 224 NW2d 698 (1974).

The Court is governed here, as it was in *Mullins,* by a very strict standard of review, a search for evidence supporting the board's finding of fact. Since such evidence is present, we cannot reverse the board's findings.

## II

As another argument Liberty Mutual presents this Court with the paradoxical question of

whether a totally disabled worker can become more totally disabled. The question assumes a determination that plaintiff was totally disabled when he left Reynolds in 1964. That factual determination was not made by the board, and in fact is logically rejected by the board's finding that the date of disablement was the last date worked in 1969. This Court may note an implied finding of fact not explicitly stated if the fact was necessarily determined in order to reach a certain conclusion. *Clark v Apex Foundry, Inc,* 7 Mich App 684, 688; 153 NW2d 182 (1967). In its brief, defendant Liberty Mutual refers to the appeal board's determination of two dates of disabling injury prior to 1969. While the board did review plaintiff's medical history, we find no reference by the board to "totally disabling" injury prior to 1969.

The record does reveal that plaintiff was voluntarily paid varying amounts of compensation during the period from 1962–1968 by Travelers. Voluntary payment of compensation is not an admission of liability, 3 Larson, Workmen's Compensation, § 79.41, p 177. There was no administrative or judicial adjudication that plaintiff was totally or partially disabled in 1962 or 1964, and in fact plaintiff's subsequent employment and medical history belies such a finding. Testimony revealed that during his various employments between 1965–1968, plaintiff was not under the care of a physician, was not taking medication and was not wearing a back brace. He left those jobs for reasons unconnected with his back condition and testified he was able to do the work at each of the jobs.

We agree with Liberty Mutual's interpretation of the law that a person may not lose what he has already lost. *Dyer v Abrasive Dressing and Tool Co,* 315 Mich 215; 23 NW2d 640 (1946), and

*Magreta v Ambassador Steel Co,* 378 Mich 689; 148 NW2d 767 (1967). But we note those cases dealt with the loss of an eye and of a leg, and with statutes specifically defining under what conditions the loss is deemed permanent. We deal here with a more illusive injury, a back problem spreading over an employment history of nine years. A determination of when that disability became total brings us full circle to the factual determination made by the board and which we have already determined is binding on this Court. The date of disablement, as determined by the board, was the last day worked for defendant Reynolds.

### III

Liberty Mutual raises as its third issue a fundamental assault on the established Michigan rule requiring the insurer on the last date worked to assume the entire cost of successive injuries combining to produce final disability. However persuasive the argument might be, previous Michigan Supreme Court authority has answered the question, *Sosnowski v Dandy Hamburger,* 384 Mich 221; 180 NW2d 761 (1970), and a challenge to that authority must be made there and not here.

### IV

Liberty Mutual's final claim of error is directed at the board's award, *sua sponte,* of 6% interest on the unpaid compensation. This Court has recently released conflicting decisions on the issue of interest on compensation awards. *White v Extra Labor Power of America,* 54 Mich App 370; 221 NW2d 214 (1974) (5% interest); and *Morris v Baker Auto Parts,* 57 Mich App 65; 225 NW2d 179 (1974), (6% interest).

We follow the holding in *White, supra.* We are convinced that when the Supreme Court first allowed interest on compensation awards, *Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960), the interest they considered was the "legal rate" of interest, *Wilson,* p 514. As Judge CARLAND recognized in *White, supra,* p 377, the legal rate of interest in Michigan is fixed at 5% by virtue of MCLA 438.51; MSA 19.11, now MCLA 438.31; MSA 19.15(1).

The judgment of the board is therefore affirmed but modified to include 5% interest on the judgment. No party having fully prevailed, no costs to either party.